UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT JACIAN DAVIS                                    CIVIL ACTION

VERSUS                                                          NO. 16-15591

SEC. JAMES LEBLANC ET AL.                        SECTION "H"(2)

## REPORT AND RECOMMENDATION

Plaintiff, Robert Jacian Davis, is a prisoner incarcerated in the Rayburn Correctional Center ("Rayburn") in Angie, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Secretary of the Louisiana Department of Corrections ("DOC") James LeBlanc; Rayburn Warden Robert Tanner; Asst. Warden Beverly Kelly; Classification Officers Kathy Seal and Sharon Freeman; Time Computation Clerk Ivy Morris; Director of Nurses Teresa Knight; and Major Tim Crawford, Chairman of the Disciplinary Board.

Davis alleges that Rayburn officials used his prior disciplinary record to place him in supervised custody, subjected him to racial discrimination and retaliation in the grievance process and failed to provide him with adequate medical care for his diabetic condition. Record Doc. Nos. 4, 15 and 22 (Complaint and Amended Complaints).  He seeks compensatory and punitive damages, costs and a preliminary and permanent injunction to stop defendants from violating his constitutional rights.  Id., Complaint at ¶ V.

On December 1, 2016, I conducted a telephone conference in this matter. Record Doc. No. 24. Participating were plaintiff pro se and Michael Keller, counsel for the defendants. Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Davis testified that he is currently incarcerated at Rayburn based upon his conviction on September 27, 2011, for second degree robbery. He said he is serving a prison sentence of seven and one-half years. He stated that he was transferred to Rayburn on August 29, 2016, and all of his claims in this case arise from his incarceration at Rayburn.

Davis confirmed that he asserts three kinds of claims in his original complaint and that part of the relief he seeks is immediate preliminary injunctive relief. As to his first claim about his classification in lockdown at Rayburn, Davis testified that upon his arrival at Rayburn, he was classified as a maximum security inmate and placed in a lockdown area. He alleged that he was classified in this way even though he had no disciplinary charges or issues at Rayburn and that there was therefore no reason for him to be placed in lockdown.

Davis testified that he had been transferred to Rayburn from the Allen Correctional Center, and he acknowledged that during the approximately two years he was

incarcerated at Allen he had been convicted of three disciplinary infractions, including one for "defiance" and two others for "aggravated disobedience."  He described "defiance" as "you're in a conversation and you curse" a guard. He described "aggravated disobedience" as being given an order by a guard, but "you didn't do it or you didn't do it how they wanted you to do it."  Davis stated that before he was sent to Allen, he was in a work release program in West Baton Rouge Parish and several other detention centers where he had no disciplinary violations.

Asked to describe "Level 2 lockdown" to which he has been assigned at Rayburn, Davis said it consists of being "away from general population. . . . saying I'm a maximum [security] inmate."  He complained that he was placed in that classification based on his prior disciplinary record at Allen and without any hearing at Rayburn.  He stated that lockdown means an inmate is kept in his cell 24 hours a day, as compared to general population, where "you're free to roam around the compound and do different things."  He said that  general population privileges include "you can go outside when you want, use the phone when you want, you can go to the gym, [go to] different call-outs like religious call-outs, . . . you can walk to the kitchen."  He complained that in lockdown, he can use the phone only once a week and spend time outdoors only once a week on a Saturday.  He stated that inmates like himself in lockdown "can only do what [prison officials] allow you to do . . . you can't use the phone when you want to, you

can't go outside when you want to, you can't shower when you want to, you can't do nothing" when you want to.  Davis acknowledged that while in lockdown he is able to shower every day, but not whenever he wants to shower.

He complained that he was classified in this way without a hearing at Rayburn. "My complaint is . . . if I was on general population, I could do everything myself, I don't have to go to them for nothing, and I don't have to wait for them to do nothing for me . . . When I got here, they just throwed (sic) me on lockdown from something I was used to [general population, to] something that I never been through, and I didn't have no writeup, no disciplinary [record], no nothing [at Rayburn] to put me on lockdown. "

Davis testified that he has received three writeups for disciplinary infractions since his arrival at Rayburn; one for defiance, another for aggravated disobedience and a third for possession of contraband.  He stated that his classification claim includes that he did not appear before any board at Rayburn before being classified for lockdown status.  "If I had been seen by a board, they would have seen that I didn't have no writeups [at Rayburn] to go on lockdown. . . I was just put in there."  He said he wrote a grievance protesting his classification, and the response from Rayburn officials was that he had not been transferred from Allen to Rayburn for disciplinary reasons, but that Rayburn officials had made the decision to classify him for lockdown because he had committed disciplinary violations at Allen.  Davis said he had already served the sanctions for those

disciplinary infractions at Allen and to have to serve them again at Rayburn constitutes "double jeopardy."

As to his medical care claim, Davis acknowledged that he had received and reviewed the medical records that I previously ordered jail officials to produce, Record Doc. Nos. 9 and 23, and that they are "somewhat accurate, minus all the . . . routine sick calls I filed for diabetes." He confirmed that his medical problem is diabetes diagnosed before his incarceration. He stated that he was prescribed metformin and glucophage for his diabetes before his incarceration and that he has been taking those medications for about 22 years.

Davis testified that his complaint is that he did not receive these medications for his diabetes immediately upon his arrival at Rayburn on August 29, 2016. "It was late. . . . I started getting it here [at Rayburn] on the 13th of September. I got transferred here on August 29th," he said. He said he now receives 20 milligrams of glipizide and 500 milligrams of metformin, two separate medications for diabetes, daily at Rayburn and that he had also been receiving those at Allen. He complained that he experienced a delay of about 15 days after he was transferred from Allen to Rayburn during which he was not receiving these medications. He stated that he has been receiving them since that time, but not other things he is supposed to have for his diabetes, including another medication and "diabetic shoes" for his diabetic anthropathy.

Davis testified that he had seen a doctor "probably about a month and two weeks ago" for his diabetes at Rayburn.  He stated that at the appointment, the doctor prescribed his medications, including metformin, glipozide, rantinide to protect his kidneys from diabetes, zyrtec and lisinopril, all of which he has been receiving.  He reiterated that his complaints about his medical care concern the 15-day delay upon his arrival at Rayburn before he began receiving his medications and that he has not yet received the additional medication and special shoes for his anthropathy.  He said he had never seen Dr. McVea, who he named in his lawsuit papers, while at Rayburn.  He also complained that he continues to make the same complaints and that "I wish that I could go to a facility with proper medical care," specifically a facility with a chronic care clinic.  He said he has been seen by a nurse at Rayburn when he submits his sick call requests "over 15 or 16 times," but the nurse can only take down his complaints, check his blood pressure and temperature and submit them to the doctor.

As to his racial discrimination claim, Davis stated that he is African-American.  Asked to describe how he has been discriminated against at Rayburn based upon his race, he stated:  "Here, they have many different grievances and lawsuits concerning . . .  the black inmate population.  It's known throughout DOC that this camp . . . that's what it is.  Some of the officers will tell you they don't like blacks and they don't care what's going on with them."

As to racial discrimination against himself specifically, Davis testified that when he started complaining about being put in lockdown, one officer retaliated against him by calling him a monkey and saying that "they ain't gonna do nothing for you monkeys anyway." He also stated that other acts of retaliation based on his race occurred when another officer told him "all I do is sell drugs," and then searched his cell and came out with a handful of pills and charged him with possession of contraband, when in fact the pills belonged to Davis's cell-mate. He alleged that at the time the officer found the pills he was not receiving medication of any kind. Davis stated that he had a hearing concerning the contraband charge, he was permitted to make a statement on his own behalf after having received written notice of the charge, and he was found guilty and lost some good-time credit. He said that the disciplinary board was constituted of all white officers and that his appeal of that finding is still pending.

Davis also alleged that another officer searched his cell, threw his legal papers around and tore his Koran. He complained that after he filed a grievance concerning the incident, another officer who heard the grievance found that the claim was unsubstantiated, when all the officer had to do was look at video of the incident and he would have seen what happened. He said that some of his legal work was destroyed, but he was able to put about two-thirds of it back together. He stated that the legal work all related to the instant case before this court.

Asked why he thought these actions were taken because he is black, Davis testified that "it's a known fact around here, that's the only people that go through things here. The statistics will show you that [in] the disciplinary court, all blacks get a harsher sentence than anybody else." He said that when he first arrived, other inmates told him that was the case. He alleged that when he received the disciplinary writeup from Sgt. Penton for defiance and aggravated disobedience for not getting into the shower, Penton called him a "monkey" and indicated that he knew Davis had filed this lawsuit. Davis confirmed that each time he received a disciplinary writeup, he went before a disciplinary board chaired by a white officer, was given an opportunity to make a statement, found guilty and then appealed both to the warden, who denied them, and then on to the DOC Secretary, where his appeals remain pending.

Davis also elaborated on a claim concerning a "book mobile" system at Rayburn that he asserted in one of his requests for a temporary injunction, though not in his original lawsuit. He said, "Everything I do, . . . legally. . . you gotta give to them to look over." He complained that the "book mobile" system at Rayburn requires him to submit requests for legal materials, like case decisions, to an inmate counsel, who then obtains copies and delivers them to Davis "like a week later." He gave as an example that when he prepared his supplemental complaint in this case, he had to go through Lt. Jordan, who

8

heads Rayburn's legal program for inmates, and she returned only incomplete copies to him.

Asked what relief he sought in connection with this "bookmobile" complaint, Davis testified that he wants to be able to "do it myself." He said he does not know if the persons to whom he sends requests for legal materials and who deliver them to him read his materials, which he believes should be confidential. He complained that even when he receives the materials, he can only retain them for three days before they must be returned, so that if he needs to see them again he must submit another request and then wait again for up to a week before seeing the materials again. He acknowledged that all of the legal materials he has requested and needs are for his use in prosecuting the instant lawsuit in this court.

Plaintiff's submissions to the court seeking a preliminary injunction and/or temporary restraining order, Record Doc. Nos. 5, 16, 26 and 28, are addressed below in this report.

<u>ANALYSIS</u>

I.   <u>STANDARDS OF REVIEW</u>

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); <u>Thompson v. Hicks</u>, 213 F. App'x 939,

942 (11th Cir. 2007); <u>Lewis v. Estes</u>, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); <u>Lee v. Hennigan</u>, 98 F. App'x 286, 287 (5th Cir. 2004) (citing <u>Ruiz v. United States</u>, 160 F.3d 273, 274 (5th Cir. 1998)); <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998); <u>Lewis v. Sec'y, DOC</u>, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), <u>aff'd</u>, 589 F. App'x 950 (11th Cir. 2014).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); <u>Lewis v. Charlotte Corr. Inst. Emps.</u>, 589 F. App'x 950, 952 (11th Cir. 2014); <u>Thompson</u>, 213 F. App'x at 942; <u>Shakur</u>, 391 F.3d at 113; <u>Carr v. Dvorin</u>, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute

a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violations of his constitutional rights, even under the broadest reading.[1]

## II.     CLASSIFICATION/LOSS OF GOOD TIME

Davis's related claims that his constitutional rights were violated based on his classification as a maximum security inmate and placement in lockdown and his prosecution on disciplinary charges at Rayburn resulting in his loss of good time credit toward early release fail to state a claim of violation of his constitutional rights and must be dismissed.

Plaintiff has no constitutional right to a particular status or classification within any prison. The classification of inmates is an administrative function of the prison.

---

[1] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Jones v. Diamond, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[2]  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994) (emphasis added); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472).  "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law."  Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification.  The classification of prisoners is a matter within the discretion of prison officials.  Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."  Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner,

---

[2] Overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

532 U.S. 732, 735 (2001); accord Jones v. Roach, 196 F. App'x 287, 288 (5th Cir. 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

Assuming the truth of Davis's individualized allegations, as described in his written submissions and testimony, it cannot be concluded that defendants' refusal to house him in a general population area of the jail, as opposed to disciplinary lockdown, was unconstitutional. Plaintiff's subjective belief that he is not a disciplinary risk and is somehow entitled to general population placement is conclusory, unsupported and insufficient for the court to conclude that prison officials' discretionary decision concerning how and where he should be housed was unconstitutional.

The circumstances described in Davis's testimony do not establish the objective unreasonableness of this particular classification decision. Plaintiff testified that he has accumulated a record of disciplinary infractions at both Allen and Rayburn while serving his current prison sentence. Thus, Rayburn officials have a rational basis for the administrative classification decision they have made as to Davis. In this instance, the failure to house Davis in the more lax environment of general population cannot be characterized as arbitrary or indiscriminate or as an abuse of the discretion the law assigns to prison officials, with which this court should afford deference and should not interfere. No violation of Davis's due process or other constitutional rights occurred under these circumstances.

Moreover, in Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983); accord Richardson v. Joslin, 501 F.3d 415, 418-19 (5th Cir. 2007). In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted).  Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

The Supreme Court intimated in Sandin that prison disciplinary proceedings resulting in the loss of good time credit may result in an "atypical and significant hardship" implicating due process concerns because they affect the duration of the inmate's imprisonment. Sandin, 515 U.S. at 479-84.  Without specifically addressing

Sandin, the Fifth Circuit held in a case involving the Texas good time statute that prison disciplinary action that results in an inmate's loss of good time credits must be accompanied by certain procedural safeguards of the type described in the pre-Sandin Supreme Court decision in Wolff.  Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997).  Similarly, in Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997), the Fifth Circuit stated that a prisoner's "loss of 30 days good time credit calls for a more careful analysis" of applicable due process principles.

In Wolff, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner need not be afforded "the full panoply of rights" provided in criminal proceedings.  Wolff, 418 U.S. at 556.  Nevertheless, the Wolff Court held that prison officials must afford the prisoner some due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf.  Id.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison, 104 F.3d at 767.  "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all."  Wilkinson v. Austin, 545 U.S. 209, 225 (2005) (citations omitted).  The Fifth Circuit held in Madison

that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns."  Madison, 104 F.3d at 768; accord Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008); Dixon v. Hastings, 117 F. App'x 371, 372 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000).   In Hernandez and Madison, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. Hernandez, 522 F.3d at 563; Madison, 104 F.3d at 768.  Some examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction.  Sandin, 515 U.S. at 484.

In addition, the case law is clear that an inmate's allegation that a prison official asserted false disciplinary charges against him fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing. Harris, 482 F. App'x at 930 (5th Cir. 2012) (quoting Collins, 743 F.2d at 253-54); accord Doolittle v. Holmes, 306 F. App'x 133, 134 (5th Cir. 2009); Moore v. Butler, 211 F.3d 593, 2000 WL 329165, at *1 (5th Cir. Mar. 17, 2000).

On the other hand, "a forfeiture of 'good time' credit . . . normally prevents a due process claim from being foreclosed by <u>Sandin</u>" because it affects the quantity, rather than the quality, of time served. <u>Collier v. Dunaway</u>, No. 08-4264, 2008 WL 4809467, at *2 (E.D. La. Oct. 31, 2008) (citing <u>Madison</u>, 104 F.3d at 768); <u>Bean v. McConnell Unit</u>, No. C-06, 223, 2006 WL 2346295, at *3 (S.D. Tex. Aug. 11, 2006)). Nonetheless, Davis's due process claim regarding his lost good time credit, for which his complaint seeks declaratory, injunctive and monetary relief, must be dismissed at this time for three reasons.

First, Davis's testimony and written submissions allege that the actions taken against him based upon the disciplinary charges and resulting hearings at Rayburn were that he lost good time credits and continued to be incarcerated for the remainder of his sentence. It is well established that the

> Due Process Clause confers a liberty interest in punishment that is not "qualitatively different from the punishment characteristically suffered by a person convicted of crime." . . . So long, however, as the punishment is "within the normal limits or range of custody which the conviction has authorized the State to impose," there is no violation of a protected liberty interest conferred by the Due Process Clause.

<u>Richardson</u>, 501 F.3d at 419 (quoting <u>Sandin</u>, 515 U.S. at 478, 479 n.4) (internal quotations omitted). Thus, requiring an inmate to serve out the remainder of the sentence imposed when he was convicted does not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular

forms of process of the type described in <u>Wolff</u> were required.  <u>Id.</u> (citing <u>Sandin</u>, 515 U.S. at 479 n.4).

Second, Davis received all appropriate due process of the type required by <u>Wolff</u> in connection with his loss of good time credits.

> "Where a prison disciplinary hearing may result in the loss of good time credits," due process requires:  "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [the inmate's] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."

<u>Arceneaux v. Young</u>, 369 F. App'x 620, 620 (5th Cir. 2010) (quoting <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985)).

Davis testified that he received a written description of the charges against him and hearings before the disciplinary board.  He stated that the board received the disciplinary reports and gave him the opportunity to provide his own testimony about the incident.  He was afforded and pursued subsequent appeals, which remain pending at the DOC Secretary level.  Under these circumstances, plaintiff received adequate due process in connection with the disciplinary charge against him, even to the extent that the proceedings resulted in loss of good time credits.  <u>Id.</u> (citing <u>Wolff</u>, 418 U.S. at 564-66).  Davis therefore fails to state a due process claim for which he would be entitled to relief under Section 1983.

Third, in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

<u>Id.</u> at 486-87 (emphasis in original) (footnote omitted).  Although the Supreme Court's decision in <u>Heck</u> concerned a civil action for monetary damages, the Fifth Circuit has also applied <u>Heck</u> in cases in which the plaintiff seeks injunctive relief, <u>Clarke v. Stalder</u>, 154 F.3d 186, 189 (5th Cir. 1998) (citing <u>Edwards v. Balisok</u>, 520 U.S. 641, 645-46 (1997)), and in cases alleging loss of good time credit.  <u>Toppins v. Day</u>, 73 F. App'x 84, 2003 WL 21757342, at *5 (5th Cir. June 26, 2003) (citing <u>Edwards</u>, 520 U.S. at 648).

Davis's due process claim regarding the loss of good time is connected to the validity of the subject confinement to the extent he argues that his conviction of the disciplinary charge and the sanction of losing good time impacted his release date.  Heck, 512 U.S. at 479; Teague v. Quarterman, 482 F.3d 769, 778-79 (5th Cir. 2007); Toppins, 2003 WL 21757342, at *5 (citing Edwards, 520 U.S. at 648); Clarke, 154 F.3d at 190. When a disciplinary action resulting in the loss of good time credits "has not been reversed or overturned," it "fails to meet Heck, [and is] . . . properly dismissed." Toppins, 2003 WL 21757342, at *5; accord Swafford v. Cain, No. 13-0788-JWD, 2014 WL 4418537, at *5 (M.D. La. Sept. 8, 2014) (citing Edwards, 520 U.S. at 648; Montoya v. Jones, 118 F. App'x 797, 798 (5th Cir. 2004); Johnson v. Boland, No. 2:12-CV-0113, 2012 WL 2358157, at *1 (N.D. Tex. May 31, 2012)).

Davis's complaint, his testimony and the overall record indicate that he was convicted of disciplinary charges, both at Allen and at Rayburn.  There is no indication in any of his written submissions or testimony that his conviction on the disciplinary charges was set aside in any of the ways described in Heck.  Thus, any claim for relief that plaintiff asserts challenging his loss of good time credit is premature and must be dismissed under Heck.  As the Fifth Circuit has noted, the dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again until the Heck conditions are met.  Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996)).

In addition, based upon his record of disciplinary infractions, his classification as a lockdown inmate was well within the broad discretion afforded prison officials as part of their legitimate jail administration and security functions.  Davis has no liberty interest in any particular classification or general population lifestyle in prison.  Under these circumstances, these allegations fail to state a claim upon which relief may be granted under Section 1983.

III.    MEDICAL CARE

In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively,

'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

In the Section 1983 medical care context, a showing of deliberate indifference to serious medical needs "requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Tex, Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S.

> 397, 117 S. Ct. 1382, 1391 (1997).  The deliberate indifference standard
> permits courts to separate omissions that "amount to an intentional choice"
> from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (additional

citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal

law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

Initially, it cannot be concluded that the current state of the diabetic condition that

plaintiff described presented a serious medical need for constitutional purposes.

Certainly, plaintiff has not suffered "a life-long handicap or permanent loss" of the type

many courts require to constitute a serious medical need for constitutional purposes.

See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994),

overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing

Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious

when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); see

also Fourte v. Faulkner Cnty., 746 F.3d 384, 389 (8th Cir. 2014) (high blood pressure

readings alone do not indicate serious medical need); Banks v. Mannoia, 890 F. Supp.

95, 99 (N.D.N.Y. 1995) ("bowel problems" and headaches not considered serious

medical problems); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches

and sore throat not serious).  Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978)

(no serious medical need when plaintiff's high blood pressure presented no "true danger"

or "serious threat" to his health).  Neither his medical records nor his testimony indicate

that the treatment omissions about which he complains had any actual deleterious effect on his physical condition, especially in light of his acknowledgment that he has been able to take his diabetes medication throughout his incarceration at Rayburn, after the initial 15-day delay.

Even assuming, however, without concluding that plaintiff's diabetic condition presented a serious medical need for constitutional purposes, Davis has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in Rayburn.

Davis testified, and the medical records confirm, that while incarcerated in Rayburn, he was seen by a physician and other medical personnel, including a nurse, more than a dozen times, and provided with metformin and glucophage for his diabetic condition, along with other medications, all of which have addressed his condition to a substantial extent.  See Brightwell v. Lehman, 637 F.3d 187,  194 (3d Cir. 2011) (prison official's failure to provide diabetic diet to diabetic inmate was not deliberate indifference when inmate "received appropriate accommodations and regular medical screenings"); Radunz v. Muhlhausen, 375 F. App'x 618, 620-21(7th Cir. 2010) (no deliberate indifference when inmate received regular medication); Cody v. CBM Corr. Food Servs., 250 F. App'x 763, 765 (8th Cir. 2007) (summary judgment was proper on

inmate's claim that defendant failed to provide him with a special diabetic diet, as ordered by the doctor, when inmate presented no evidence of immediate danger to his health or that his health suffered due to failure to provide prescribed diet); Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference when prisoner received medication for diabetes, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for diabetes).

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent in any way to plaintiff's medical condition. While it is clear from his allegations and testimony that Davis is not satisfied with the speed or nature of his medical care, and that he experienced some delay in his initial treatment, no finding of deliberate indifference can be made based on this record.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. In Davis's case, the decisions made by the treating medical providers to render the care that they gave, rather than more specialized "chronic care" he desires, are classic examples of the exercise of

"medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Although Davis has alleged a 15-day delay in receiving his diabetes medications upon his transfer from Allen to Rayburn, mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the continuing medical attention Davis has received for his diabetes and other conditions during his Rayburn incarceration. See Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Contentions like Davis's that amount to a disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious

medical condition that ultimately resulted in death does <u>not</u> constitute deliberate indifference, even if treatment was negligently administered); <u>See</u> <u>Corte v. Schaffer</u>, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994)) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Plaintiff's complaints in this case about his medical care fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish "deliberate indifference" under the applicable constitutional standard. His medical care claim must therefore be dismissed.

IV.    <u>RACE DISCRIMINATION/RETALIATION</u>

Davis alleges that he has been discriminated against based on his race – African American – and that the discrimination includes retaliation through false disciplinary charges motivated in part by his pursuit of this lawsuit and grievances concerning his

classification. He supports this claim by alleging that defendants subjected him to name-calling and racially discriminatory disciplinary proceedings.

"To state an equal protection claim, [plaintiff] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination." McKnight v. Eason, 227 F. App'x 356, 357 (5th Cir. 2007) (citation omitted) (emphasis added); accord Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007). "A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination. Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim." Jebril v. Joslin, No. C-07-436, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (citing Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995); United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992); Pedraza v. Meyer, 919 F.2d 317, 318 n.1 (5th Cir. 1990)); accord Jones v. Castro, No. SA-6-CA-846-NSN, 2007 WL 3396500, at *4-5 (W.D. Tex. Nov. 13, 2007) (citing Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995)).

In the instant case, Davis has proffered only vague and conclusory allegations based solely on his personal, subjective belief that defendants discriminated against him, which are insufficient to state a claim for an equal protection violation. As discussed previously, defendants had evidence from Davis's disciplinary record of infractions that

he poses disciplinary risks, including defiance and disobedience.  Plaintiff has cited nothing sufficient to support his conclusory and speculative belief that defendants intentionally treated him differently because of his race.

Allegations of verbal threats or other derogatory remarks, even racial slurs, do not constitute actionable constitutional violations.  Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995).  The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'"  Id. (citation omitted); accord Watson v. Winborn, No. 02-10984, 67 Fed. Appx. 241, 241 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)). The use of a racial epithet does not give rise to a cause of action for violation of constitutional rights.  DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.), reh'g denied & opin. clarified, 186 F.3d 633 (5th Cir. 1999); see generally Shabazz v. Cole, 69 F. Supp. 2d 177, 199-201 (D. Mass. 1999) (collecting cases). "Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim . . . ." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994;

see Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995) (conclusory allegations of racial malice insufficient to maintain equal protection claim); Portillo v. Brown, No. 2:07-CV-0031, 2009 WL 1160345, at *2 (N.D. Tex. Apr. 28, 2009) (citing Al-Ra'id, 69 F.3d at 32) (inmate's allegations that prison employee called him names, laughed at him and refused to dismiss disciplinary action against him based on his race were conclusory and failed to state a claim); Webber v. Ramos, No. EP-04-CA-426-KC, 2007 WL 1039214, at *6 (W.D. Tex. Mar. 21, 2007) (citing Al-Ra'id, 69 F.3d at 32); Taylor v. Johnson, 257 F.3d 470, 474 (5th Cir. 1995)) (inmate failed to state an equal protection claim with allegations that prison employees discriminated against him based on his race when they removed him from one work assignment, denied him another particular work assignment and denied him the opportunity to file a formal complaint to challenge the work assignments.).

In a written submission to the court after he provided his Spears testimony, Record Doc. No. 27, Davis implicitly recognized that he has no evidence of intentional race discrimination beyond his own intuitions and suppositions when he asks the court to ignore the law requiring a showing of intentional discrimination. "I beg to move the court beyond its current reluctance to redress racial harm in the absence of discriminatory intent. A difficult task, I admit, particularly because intuitively I feel that proof standards

like intent . . . are used by the courts to conceal other concerns." Id. (emphasis added). This is not the law.

For the foregoing reasons, Davis fails to state a constitutional violation with respect to his equal protection racial discrimination claim.

As to retaliation, it is correct that prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts or to complain through proper channels about alleged misconduct by prison officials. Walker v. Savers, No. 15-10364, 2016 WL 4151212, at *5 (5th Cir. Aug. 4, 2016) (citing Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006)); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part & reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66)

(quotations and additional citations omitted); accord Walker, 2016 WL 4151212, at *5; Hanna v. Maxwell, 415 F. App'x 533, 535 (5th Cir. 2011).

In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment. Defendants had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and the prison warden. The Fifth Circuit agreed with the district court that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution: "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166 (citation and quotation omitted). The Fifth Circuit warned that "trial courts must carefully scrutinize these claims." Id.

> To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . . The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

Id. (citations omitted) (emphasis added); accord Walker, 2016 WL 4151212, at *5.

A year after <u>Woods</u> was decided, the Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).  Significantly, to state a claim that his constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced.  <u>Id.</u> at 356; <u>Every v. Jindal</u>, 413 F. App'x 725, 727 (5th Cir. 2011) (citing <u>Lewis</u>, 518 U.S. at 349-50; <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999)); <u>Cochran v. Baldwin</u>, 196 F. App'x 256, 257-58 (5th Cir. 2006) (citing <u>Lewis</u>, 518 U.S. at 350-51); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996).  In <u>Lewis</u>, the Supreme Court made clear that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  <u>Id.</u> at 349-50.

A few years ago in <u>Morris</u>, a case of first impression in the Fifth Circuit, the court addressed "[w]hether an allegation of <u>de minimis</u> retaliatory acts can support a retaliation claim" under the First Amendment.  <u>Morris</u>, 449 F.3d at 684.  The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

<u>Id.</u>  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so <u>de minimis</u> that they would not deter the ordinary person from

> further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.
>
> . . . . Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .
>
> With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).

The Fifth Circuit's reasoning and rulings in Morris accord with the Supreme Court's holding in Lewis that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury in order to assert a claim.  Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights. A "loss of 180 days of 'good time' credit [is] more than mere de minimis adverse actions under this Circuit's case law." Hanna, 415 F. App'x at 536 (citations omitted).

Thus, the law in the Fifth Circuit

> is well established that prison officials may not retaliate against an inmate who exercises his right of access to court.  Officials likewise may not retaliate against an inmate for using the grievance system.  A plaintiff must allege facts showing that the defendant possessed a retaliatory motive.  The inmate must show more than his personal belief that he was the victim of retaliation.  Mere conclusory allegations of retaliation are not enough.

Decker v. McDonald, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010), report & recommendation adopted, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010)

(citing <u>Morris</u>, 449 F.3d at 687; <u>Jones v. Greninger</u>, 188 F.3d 322, 324-25 (5th Cir. 1999); <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997); <u>Moody v. Baker</u>, 857 F.2d 256, 258 (5th Cir. 1988); <u>Whittington v. Lynaugh</u>, 842 F.2d 818, 820 (5th Cir. 1988)) (additional citations omitted) (emphasis added); <u>accord</u> <u>Walker</u>, 2016 WL 4151212, at *5.

Accepting as true plaintiff's testimony and written allegations, he has not established that a violation of his federal constitutional rights concerning retaliation has occurred under the circumstances he described. As discussed above, Davis cannot show retaliation based on intentional race discrimination. The Fifth Circuit has stated that the existence of a "[legitimate] prison disciplinary report is highly probative, if not dispositive, of whether a defendant acts with a retaliatory animus." <u>Rankin v. Pearson</u>, No. 5:11CV138-DCB-RHW, 2013 WL 1305517, at *6 (S.D. Miss. Mar. 26, 2013), <u>aff'd</u>, 612 F. App'x 204 (5th Cir. 2015) (citing <u>Woods</u>, 60 F.3d at 1166); <u>accord</u> <u>Reese v. Skinner</u>, 322 F. App'x 381, 383-84 (5th Cir. 2009). The record of Davis's conviction of disciplinary violations at Rayburn does not demonstrate "but for" causation; instead, it demonstrates that [defendants] had a reasonable, non-retaliatory motivation for charging Davis with the violations. <u>Walker</u>, 2016 WL 4151212, at *6 (quotation omitted) (citing <u>McDonald</u>, 132 F.3d at 231).

As to his claim that his legal papers concerning this case in this court were thrown around his cell and that some were destroyed, no actionable retaliation claim is stated. Davis has failed to show any actual injury or actual infringement of his First Amendment right of access to the courts arising from this alleged retaliation.  As discussed above, to state a claim that his constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced.  Lewis, 518 U.S. at 356 (1996); Every, 413 F. App'x at 727; Jones, 188 F.3d at 325; Cochran, 196 F. App'x at 257-58; Eason, 73 F.3d at 1328.

Davis has been able to file numerous submissions in support of his claims in this case. These proceedings have included a Spears hearing in which Davis fully participated.  His case is now being evaluated on its merits in the screening process required by Section 1915A.  Thus, Davis alleges no violation of his First Amendment constitutional right of access to the courts as a result of any allegedly retaliatory acts and he has not shown the existence of retaliatory or discriminatory motive, causation or actual prejudice.  Accordingly, his retaliation claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

## V.   LAW LIBRARY/ACCESS TO COURT

Plaintiff testified that he was denied his First Amendment right of access to the courts because of an inadequate law library, and his post-complaint written submissions

complain about the adequacy of what Davis describes as Rayburn's "bookmobile" law library system.  Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. Bounds v. Smith, 430 U.S. 817, 828 (1977); Dickinson v. TX, Fort Bend County, 325 F. App'x 389, 390 (5th Cir. 2009); Sandoval v. Johns, 264 F.3d 1142, 2001 WL 822779, at *1 (5th Cir. 2001); McDonald v. Steward, 132 F.3d 225, 230 (5th Cir. 1998); Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir. 1996).

However, a prison need not provide its inmates with a library that results in the best possible access to the courts, but must provide a library or other assistance that meets minimum constitutional standards of providing access to the courts.  Phillips v. Hust, 588 F.3d 652, 656 (9th Cir. 2009) (citing Bounds, 430 U.S. at 829; Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 856 (9th Cir. 1985)); Petrick v. Maynard, 11 F.3d 991, 994 (10th Cir. 1993); Brooks v. Soto, No. CV05-1618-DDP, 2009 WL 2025325, at *9 (C.D. Cal. July 7, 2009) (citing Bounds, 430 U.S. at 829; Lindquist, 776 F.2d at 856); Goodvine v. Gorske, No. 06-C-0862, 2007 WL 2207910, at *4 (E.D. Wis. July 30, 2007) (citing Campbell v. Miller, 787 F.2d 217, 229 (7th Cir. 1986)); Hargrove v. Henderson, No. 95-1601-CIV-T-17A, 1996 WL 467516, at *10 (M.D. Fla. Aug. 13, 1996), aff'd, 124 F.3d 221 (11th Cir. 1997).  A prisoner's law library right is not without limitations. "While the precise contours of a prisoner's right of access to the courts remain somewhat

obscure, the Supreme Court has <u>not</u> extended this right to encompass more than <u>the ability of an inmate to prepare and transmit a necessary legal document to a court</u>." <u>Vaccaro v. United States</u>, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); <u>accord</u> <u>Manning v. Sumlin</u>, 540 F. App'x 462, 463 (5th Cir. 2013) (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 356 (1996); <u>Brewer v. Wilkinson</u>, 3 F.3d 816, 821 (5th Cir. 1993).

As discussed above, the Supreme Court has held that a prisoner must demonstrate that his position as a litigant was actually prejudiced to state a claim that alleged law library inadequacies violated his First Amendment right of access to the courts.  His specific complaint is that he needs law library access better than what Rayburn provides so that he may prosecute the instant lawsuit.  As noted above, the record establishes that Davis has been fully able to submit numerous written materials with legal citations to this court in connection with this lawsuit.  The fact that he is dissatisfied with the scope and speed of the law library services provided by the Rayburn program does not render it constitutionally deficient.  His position as a litigant in this case has in no way been prejudiced by the manner or extent with which he has been provided with legal materials at Rayburn.

VI.   MOTIONS FOR TRO/PRELIMINARY INJUNCTION

Plaintiff has filed four (4) motions for a preliminary injunction or temporary restraining order in this matter.  Record Doc. Nos. 5, 16, 26 and 28.  In his first motion, Davis reiterated his claims concerning "taking my good time credits" and a "racially motivated disciplinary court" and sought an order enjoining those practices.  Record Doc. No. 5 at p. 1.  In his second motion, he sought a preliminary injunction and temporary restraining order concerning the Rayburn law library "bookmobile method," which he alleged "hinders plaintiff from preparation & filing of meaningful legal papers."  Record Doc. No. 16 at p. 2.  In his third motion, he alleged further disciplinary charges "for contraband with no evidence" and loss of good time credits arising from an incident and disciplinary proceeding similar to those previously alleged.  Record Doc. No. 26.  His fourth motion reiterated previously asserted claims and was accompanied by a "memorandum of law" including extensive case law citations.  Record Doc. No. 28.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must set forth "specific facts in an affidavit or a verified complaint" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant."  A preliminary injunction is an extraordinary equitable remedy that may be granted only if plaintiff clearly carries his burden of establishing four essential elements:  (1) a substantial likelihood of success on the merits; (2) a substantial threat

that he will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause defendants; <u>and</u> (4) the injunction will not disserve the public interest.  <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008); <u>Voting for Am. Inc. v. Steen</u>, 732 F.3d 382, 386 (5th Cir. 2013); <u>Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs</u>, 692 F.3d 343, 348 (5th Cir. 2012); <u>S. Co. v. Dauben Inc.</u>, 324 F. App'x 309, 314 (5th Cir. 2009).  Part of the requisite showing is "a <u>substantial</u> threat of <u>irreparable</u> injury if the injunction is not issued."  <u>DSC Commc'ns Corp. v. OGI Techs., Inc.</u>, 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added); <u>accord</u> <u>S. Co.</u>, 324 F. App'x at 319.

Applying the foregoing legal standards to the facts alleged in plaintiff's written submissions and testimony and the overall record establish that Davis is <u>not</u> entitled to preliminary injunctive relief.  First, a hearing has been held pursuant to <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and I have recommended that plaintiff's complaint be dismissed in its entirety for all the reasons set out above.  Thus, it cannot be concluded that the complaint presents "a substantial likelihood of success on the merits."  <u>Pharm. Research & Mfrs. of Am. v. Walsh</u>, 538 U.S. 644, 662 (2003) (citation omitted); <u>DSC Commc'ns Corp.</u>, 81 F.3d at 600.  In addition, the potent affirmative defense of qualified immunity is available to all defendants.

Second, Davis has not established that he faces a substantial threat of serious injury that would be irreparable.  His testimony and written allegations establish no constitutional violation for the reasons discussed above and therefore no constitutional injury that would be irreparable.  In addition, injury or other harm is not irreparable for Rule 65 purposes if an adequate alternate remedy in the form of money damages is available.  11A C. Wright, A. Miller, et al., <u>Federal Practice and Procedure</u> § 2948.1, text at n.2 and cases cited therein (3d ed., on Westlaw at database FPP 2948.1).  "<u>Speculative</u> injury is not sufficient," and only "a <u>strong</u> threat of irreparable injury before trial" will serve as an adequate basis for preliminary injunctive relief.  <u>Id.</u> text at nn. 9, 12 (emphasis added).  Although, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary," <u>id.</u> text at n. 26, Davis has failed to establish any such constitutional violation, all as discussed above.  Thus, the second factor also weighs against granting his motion.

Finally, the third and fourth factors – (a) balancing of the threatened injury against any damage it might cause to defendants and (b) the public interest – are related in this instance.  I find that defendants' interests and the damage they may suffer by entry of the sort of court order sought by Davis would involve this court's unwarranted interference with the administration of prison functions, including the maintenance of security and jailhouse discipline and appropriate custodial classification, in a way that would disserve

43

the public interest.  Courts must accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration, including especially the "essential goals" of "maintaining institutional security and preserving internal order and discipline," in the absence of a constitutional violation.  Bell v. Wolfish, 441 U.S. 520, 546-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  State officials have broad discretionary authority concerning the placement of prisoners in a particular status and in the maintenance of prison discipline.  Under the circumstances described by Davis, the Constitution affords him no constitutionally protected interest that might outweigh defendants' or the public's interests in prison administration and discipline.  Accordingly, Davis has not established the four factors necessary to obtain preliminary injunctive relief before trial.  On balance, all four factors weigh in favor of denying the motions.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that (1) plaintiff's motions for injunctive relief or temporary restraining order, Record Doc. Nos. 5, 16, 26 and 28, be **DENIED**, and (2) plaintiff's complaint asserting claims pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), or pursuant to Heck.

44

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___23rd___ day of January, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

45